SHORTLEY et al. v. NORTHWESTERN AIRLINES.

Civ. No. 3679.

United States District Court
District of Columbia.

April 17, 1952.

Martin F. O'Donoghue, Thomas X. Dunn, Washington, D. C., for plaintiffs.

Richard W. Galiher, William E. Stewart, Jr., Washington, D. C., for defendant.

MORRIS, District Judge.

This suit, by the male plaintiff, seeks to recover damages for injuries alleged to have been sustained by him as a result of the alleged negligent landing of one of defendant's airplanes in which he was a passenger for hire at the St. Paul, Minnesota, Airport on June 6, 1950, said injuries seriously aggravating a condition from which the plaintiff alleges he was recovering. The female plaintiff, as the wife of the male plaintiff, seeks damages for the loss of consortium of her husband as a result of the said injuries to him. The defendant filed an answer, admitting that the male plaintiff was a passenger on one of its airplanes at the time of the alleged injuries, but denied each and every allegation of negligence. The defendant subsequently filed a motion for summary judgment, accompanied by affidavits and certificates, showing certain provisions of a tariff filed by the defendant and other air lines with the Civil Aeronautics Board. The plaintiffs filed opposition to such motion. At the time of the hearing, upon motion of the defendant and leave of court granted, the defendant amended its answer, and set up as a defense "that the plaintiffs cannot maintain this action because written notice of the male plaintiff's accident was not pre-

sented to the General Office of the defendant within 90 days after the alleged occurrence, and suit was not instituted by plaintiffs within one year following the occurrence as were required by the defendant's Tariff Local and Joint Passenger Rules No. PR–2 on file with the Civil Aeronautics Board." This is in substance the ground upon which the defendant's motion for summary judgment was based. Numerous affidavits have been subsequently filed, which are in some respects inconsistent with each other. Certain facts are also asserted in the briefs and supplementary briefs filed by the parties subsequent to the hearing. For the purpose of the motion for summary judgment, however, there seem to emerge certain facts upon which action on the motion for summary judgment can be based.

The male plaintiff purchased a ticket numbered 164–442535 from the Washington Ticket Office of the United Air Lines, which covered flight "Washington - Seattle - Anchorage - Juneau - Seattle - Chicago - Washington." Upon the return from Seattle to Chicago, which was routed on a plane of the defendant, Northwest Airlines,[1] the occurrence took place which is complained of in the complaint. It appears that upon the face of the ticket purchased by the male plaintiff there appears the following statement "subject to conditions of contract on page (2)." There is attached what purports to be a copy of the book folder, in which the tickets were contained, and on page 2 thereof, among other provisions in fine print, is the following statement:

(8) The time limits for giving notice of claims and the institution of suit are set forth in Carrier's tariffs.

There also appears at the bottom of page 2 the statement "sold subject to tariff regulations issued by United Air Lines, Inc." The tariff regulations relied on in the amended answer and motion for summary judgment are Local and Joint Passenger Rules Tariff No. PR–2, in which the par-

ticipating carriers include the United Air Lines, Inc., and the defendant, Northwest Airlines, Inc. Under the general rules there appears as paragraph 17(A), under the caption of "Claims," the following:

*Personal injury and death—Time limitations.* No action shall be maintained for any injury to or the death of any passenger unless notice of the claim is presented in writing to the general offices of the participating carrier alleged to be responsible therefor within 90 days after the alleged occurrence of the events giving rise to the claim, and unless the action is commenced within one year after such alleged occurrence.

Following the accident complained of at the St. Paul, Minnesota, Airport, the original ticket and booklet container was taken up by an agent of the defendant, Northwest Airlines, who issued in lieu thereof a flight ticket rerouting the male plaintiff to Washington on another flight. Apparently the new ticket and booklet folder contained substantially the same reference to carrier's tariff, as did the original ticket and booklet folder issued by the United Air Lines, Inc., upon which the male plaintiff was making his flight at the time of the injuries complained of. It further appears that, after the expiration of the ninety-day period, the plaintiffs notified the defendant of the injuries and, as a result, an insurance adjuster was designated by the defendant to make investigation in the course of which a physical examination of the male plaintiff was had by a physician acting for the defendant, and a statement was secured from him of losses and expenses which he had incurred, all looking toward an adjustment of the claim without the necessity of litigation, and with no mention made by the defendant, or any one acting for it, that notice of claim had not been filed within a period of ninety days, nor any mention made of any limitation by tariff provision that any action on said claim be commenced within a period of one year. The plaintiffs insist that, having no actual knowledge of any such limitations as to notice or com-

---

1. The name of the defendant appears variously in the pleadings, affidavits and briefs as Northwestern Airlines, Northwest Airlines and Northwest Airlines, Inc. Undoubtedly the same corporation is intended in each instance.

mencement of action, this failure on the part of the defendant was calculated to and did lull them into a sense of security that no such limitations existed.

Upon motion made for leave to file brief as *amicus curiae*, which by order of court was granted, the Bureau of Employees' Compensation, by the United States Attorney, filed a brief *amicus curiae*, supporting the right of the plaintiffs to maintain the action notwithstanding the provisions of tariff which defendant insists preclude such action.

 The first question which must be answered is, does the inclusion of this provision in the tariff, filed by the defendant, operate as a matter of law to preclude the plaintiff from maintaining an action within the period fixed by law as a statute of limitations, but in the absence of the ninety-day notice and beyond the one-year period stated in the tariff provision? The answer is that it does not. Unquestionably, with respect to rates or matters affecting rates, the character of services to be performed, practices relating to the services to be rendered and matters required by the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., or by regulations promulgated by the Civil Aeronautics Board pursuant to said Act, the tariff regulations do as a matter of law control the carrier and the passenger or shipper, and this without any actual notice or knowledge other than the constructive notice afforded by the filing of such tariffs so required. Nowhere, however, in the Act of Congress, or in the regulations promulgated by the Board, is there any authorization or requirement for the inclusion in a tariff of any provision respecting limitation upon notice of claims or upon the time for commencement of actions thereon. Unquestionably, when a lower rate is charged for the transportation of baggage or property, based upon the valuation thereof, than would be charged for its transportation if of greater value, appropriate tariff provisions do affect the rates and charges and are constructive notice to a passenger or shipper. Where a tariff provision is gratuitously inserted with respect to a matter other than that contemplated or required by the

Act of Congress, or the regulations made pursuant thereto, a passenger or shipper is not chargeable with notice as a matter of law with respect thereto. A tariff is ordinarily understood to be a system of rates and charges. Pacific S. S. Co. v. Cackette, 9 Cir., 8 F.2d 259.

 If the limitation in the tariff respecting notice and time of suit is not binding upon the plaintiffs as a matter of law, the question then presented is whether or not the purchase and acceptance by the male plaintiff of the ticket bearing the notation which has been mentioned and contained in the booklet container, which on page 2 thereof made reference to limitations on notice and actions as was filed in the carrier's tariff, constituted an agreement between the male plaintiff and the carrier respecting the limitation as to claim for injuries and commencement of action thereon. While a contract relieving a carrier of responsibility for negligence would clearly be contrary to public policy and, therefore, of no effect, it has been recognized repeatedly, with respect to the shipper of property, and in the case of Gooch v. Oregon Short Line R. R. Co., 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443, with respect to claims for personal injury and suits thereon, that a contract may be made imposing conditions as to a reasonable time for making claims and for the institution of actions thereon. A cardinal rule, however, with respect to this is stated by the Supreme Court in The Majestic, 166 U.S. 375, 386, 17 S.Ct. 597, 602, 41 L.Ed. 1039:

> "When a company desires to impose special and most stringent terms upon its customers, in exoneration of its own liability, there is nothing unreasonable in requiring that those terms shall be distinctly declared and deliberately accepted."

It was upon this principle that Pacific S. S. Co. v. Cackette, supra, was decided. It should be noted that, in the case of Gooch v. Oregon Short Line R. R. Co., supra, the agreement limiting the time of claim and commencement of action was set out explicitly in an agreement signed by Gooch, who, by reason of such agreement, was permitted to travel without charge as a

drover for cattle being transported on the same train. It was not sought to impose this contractual limitation upon him by reference to some provision included in a filed tariff.

Several cases have been cited by the defendant in support of its position that summary judgment should be granted because of the tariff provision as to limitation on notice and commencement of suit, particularly in view of the reference thereto on the ticket and booklet container. The case of Wihelmy v. Northwest Airlines, D. C., 86 F.Supp. 565, and two cases not reported, but decided by this Court, Losh v. American Airlines,[1] in which summary judgment was granted October 19, 1951, and Smith v. Eastern Airlines,[1] in which summary judgment was granted June 21, 1951, do hold that such tariff provisions referred to on the ticket preclude the maintenance of an action without the required notice or beyond the period provided for the commencement of an action. Others of the cases cited by the defendant involve tariff provisions relating specifically to the cancellation of flights and rerouting of passengers on account of weather conditions. Mack v. Eastern Air Lines, Inc., D.C., 87 F.Supp. 113. It appears that the case of Indemnity Ins. Co. of North America v. Pan American Airways, Inc., D.C., 58 F.Supp. 338, 341, also supports the defendant's contention, but it is to be noted that there the flight was subject to the provisions of the Warsaw Convention, 49 Stat. 3000, which, under the treaty-making power, clearly became the controlling law. It should be noted also in that case that the provisions of the transportation contract between the airways company and the passenger, which required written notice of claim within thirty days after disaster, death or injury, does not appear to have been simply by reference to a filed tariff provision, and furthermore, upon the refusal of the court, at the asking of the plaintiff, to strike the defense setting up such provision of the transportation contract, the court stated:

"Consequently, I decide that the fourth defense cannot be stricken as a matter of law. I do not pass on the question whether any circumstances here excuse noncompliance or otherwise render the provision inapplicable."

With respect to the authorities cited in support of the defendant's motion for summary judgment, and which are not distinguishable, as some of the cited cases as just noted are, apparently the questions raised in the instant case were not there raised. They were not discussed, and presumably not considered. Certainly that is true of the two cases decided by this Court, above referred to, in which neither the points and authorities or the argument of counsel, as disclosed by the transcripts thereof, revealed any consideration of such questions. In any event, no controlling authority requires a conclusion that as a matter of law these plaintiffs are precluded from maintaining this action.[2]

As to whether or not the obligation of the carrier was modified by contractual agreement, as to which the male plaintiff had either actual knowledge or such reasonable notice as to be equated to actual knowledge, is a question of fact to be determined under appropriate pleadings by the trier of the facts. The same is so with respect to any question of fact as to waiver or estoppel. While these doctrines are ordinarily not applicable to a common carrier with respect to a departure from published tariffs, they are not inapplicable where such common carrier seeks to exonerate itself of liability by reason of a tariff provision which it is neither authorized nor required to file by the applicable Act of Congress, or regulations promulgated thereunder.

For the reasons stated, the motion for summary judgment will be denied. Counsel will prepare an appropriate order to carry this decision into effect.

1. No opinion for publication.

2. A very excellent and illuminating discussion of the character of the tariff provisions here involved, the principles of law applicable and the reported cases relating thereto is to be found in an article "Airline Tariff Provisions As a Bar To Actions for Personal Injuries," by James C. McKay, published in 18 The George Washington Law Review 160 (1950).